IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION


DEBRA YARBROUGH                                          PLAINTIFF

V.                            NO. 2:11CV00041 JTR

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration                          DEFENDANT


## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff, Debra Yarbrough, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB). Both parties have filed Appeal Briefs (docket entries #10, #11), and the issues are now joined and ready for disposition.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In its review, the Court should consider evidence

supporting the Commissioner's decision as well as evidence detracting from it. *Wildman*, 596 F.3d at 964.  However, a decision will not be reversed merely because substantial evidence would have also supported a contrary outcome, or because the Court would have reached a different conclusion.  *Id.*

On October 16, 2007, Plaintiff protectively filed an application for DIB, alleging an onset date of October 16, 2004.  (Tr. 91-93, 113.)  She said she was unable to work due to problems with her feet, heart, stomach, thyroid and hands, as well as diabetes and arthritis.  She reported: difficulty walking or standing for long periods; inability to wear shoes; difficulty bending and lifting; difficulty using her hands; a rapid heart rate, weakness and fatigue; and constantly being sick to her stomach.  She said she was 5'3" and weighed 216 pounds.  (Tr. 103-04.)  Plaintiff was forty-three years old at the time of her alleged disability onset, had completed eleventh grade and CNA (certified nursing assistant) training, and had past work as a cashier, a CNA, a machine operator, a factory worker, and a babysitter.  (Tr. 105, 111, 113, 117.)

After Plaintiff's claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge (ALJ).  On January 6, 2010, the ALJ conducted a hearing at which Plaintiff testified.  (Tr. 28-38.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step

sequential evaluation process.  Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) & (b).  If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience.  *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities.  *Id.* §§ 404.1520(a)(4)(ii) & (c).  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling.  *Id.* §§ 404.1520(a)(4)(iii) & (d).  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.* §§ 404.1520(a)(4)(iv) & (f).  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given the claimant's RFC, age, education and work experience. *Id.* §§ 404.1520(a)(4)(v) & (g).  If so, benefits are denied; if not, benefits

are awarded.  *Id.*

In his January 29, 2010 decision (Tr. 9-17), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity from October 16, 2004, her alleged onset date, through December 31, 2009, her date last insured;[1] (2) had "severe" impairments of diabetes mellitus type II, hypertension, hypothyroidism, gastroparesis, and mild degenerative changes in both hips, with "non-severe" impairments of anxiety and depression; (3) did not have an impairment or combination of impairments that met or equaled a listed impairment; (4) had the RFC to perform the full range of sedentary work;[2] (5) was not fully credible regarding the intensity, persistence and limiting effects of her symptoms; and (6) was unable to perform her past relevant work; but (7) after consulting the Medical-Vocational Guidelines[3] and considering Plaintiff's age (younger), education (limited), work experience and RFC, she was able to perform other jobs that exist in significant numbers in the national economy.  Thus, the ALJ concluded that Plaintiff was not disabled during the relevant time period.

---

[1]To qualify for disability insurance benefits, an applicant must establish that he or she was disabled before expiration of his or her insured status.  *See* 42 U.S.C. § 416(i) (defining the terms "disability" and "period of disability"); § 423(a) (describing who is entitled to disability insurance benefits); *Dipple v. Astrue*, 601 F.3d 833, 834 (8th Cir. 2010).

[2]*See* 20 C.F.R. § 404.1567(a) (sedentary work requirements).

[3]*See* 20 C.F.R. § 404.1569; 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.19.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 1-3.) Plaintiff then appealed the denial of benefits to this Court (docket entry #2).

## II. Analysis

Plaintiff argues that the ALJ erred: (1) in failing to find that she met the requirements of a listing-level impairment due to her physical impairments when combined with the effects of her obesity; (2) in failing to consider the additional and cumulative effects of her obesity when assessing her RFC; and (3) in concluding that she retained the RFC to perform the exertional demands of sedentary work without obtaining testimony from a vocational expert.  For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

A.    Evaluation of Obesity.

An ALJ is required to consider the effects of obesity at all steps of the sequential evaluation process, alone and in combination with other impairments.  SSR 02-01p, 2000 WL 628049, at *1, *3-*7  (Sept. 12, 2002).  When an ALJ specifically references the claimant's obesity in his decision, such review may be sufficient to avoid reversal.  *Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009).  Moreover, adequate consideration of obesity can be shown where the ALJ adopts an opinion of

a doctor who is aware of and has considered the claimant's obesity.  *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011).

The ALJ's decision in this case shows that he considered the evidence of Plaintiff's obesity, properly evaluated that evidence, and took it into account in determining whether she met the criteria of a listing and in formulating her RFC.

In summarizing the medical evidence, the ALJ noted Plaintiff's hearing testimony that she weighs 200-215 pounds and is five feet three inches tall.  (Tr. 13, 33.)  He noted her diagnosis of morbid obesity in October 2005, when her weight was 220.  (Tr. 14, 205.)  He then stated:

> The medical records suggest the claimant is obese.  The medical record indicates that the claimant weighs 215 pounds, and has a height of 63".  This would give her a Body Mass Index (BMI) of approximately 38.  BMI is a measure of an individual's obesity.  Indexes over 29 are considered to be in the obese range. An individual may have limitations in any of the exertional functions, postural functions, in her ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." (SSR 02-01p.)  The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant.

(Tr. 15.)

The ALJ also stated that he was affording "significant weight" to the physical RFC assessment of a state agency medical consultant, Ronald M. Crow, D.O., dated January 28, 2008 (Tr. 15, 39, 375-82), as affirmed on review by Lucy Sauer, M.D.

(Tr. 40, 383-86).  To support his RFC findings, Dr. Crow referred to specific medical evidence relevant to obesity (Tr. 382), including: (1) Plaintiff's March 5, 2004 weight of 244 pounds at a checkup (Tr. 163); (2) clinical note from October 2005, showing a weight of 220 pounds and a diagnosis of morbid obesity (Tr. 205); (3) her March 5, 2007 weight of 230 pounds (Tr. 177); (4) her November 6, 2007 weight of 215 pounds and 38.08 BMI (Tr. 197); and (5) her November 21, 2007 weight of 215 pounds (Tr. 352-53).  Dr. Sauer referred to additional medical records, noting that Plaintiff's weight was 215 at a January 18, 2008 office visit.  (Tr. 358.)

The ALJ expressly cited the ruling which governs the evaluation of claims of obesity (Tr. 15), which requires consideration of the "the combined effects of obesity with other impairments."  SSR 02-01p, *supra* at *1.  The ALJ also correctly stated that he had to consider, at step three of the sequential process, whether Plaintiff's impairment or "combination of impairments" meets or medically equals the criteria of a listing.  (Tr. 10.)  He summarized the evidence of her alleged impairments, including obesity.  (Tr. 13-15.)  He explicitly found that Plaintiff did "not have an impairment or combination of impairments" that met or medically equaled all the criteria of a listed impairment.  (Tr. 13.)

This record is sufficient to demonstrate that, in determining whether Plaintiff met the relevant listings, the ALJ considered the combined effect of Plaintiff's

impairments – including her obesity – as required by the regulations and SSR 02-01p. *See* 20 C.F.R. §§ 404.1523, 404.1526(b)(3); *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (ALJ properly considered combined effect of claimant's impairments where he summarized medical evidence, separately discussed each alleged impairment, and expressly found that claimant did not have impairment or combination of impairments equaling listing-level impairment).

Furthermore, the ALJ's decision expressly states that he considered the effects of Plaintiff's obesity in formulating the physical RFC assessment, and he relies on the specific RFC findings of Drs. Crow and Sauer, who made numerous references to Plaintiff's obesity. (Tr. 15.) The ALJ also correctly stated that, in determining RFC, he was required to consider "all of the claimant's impairments, including impairments that are not severe." (Tr. 10.) *See* 20 C.F.R. § 404.1545(a)(2).

Thus, the ALJ adequately considered Plaintiff's obesity and accounted for any related functional limitations by limiting the RFC to sedentary work.

B.     Step Five Determination.

At step five of the sequential analysis, the Commissioner bears the burden of showing that jobs exist in significant numbers which a person with the claimant's RFC can perform. 20 C.F.R. § 404.1560(c)(2). This burden can be satisfied by reference to the Medical-Vocational Guidelines, which are fact-based generalizations about the

availability of jobs for people of varying ages, educational backgrounds, and previous work experiences with differing degrees of exertional impairments.  *Fenton v. Apfel*, 149 F.3d 907, 910 (8th Cir. 1998).

Generally, where the claimant suffers from a nonexertional impairment such as pain, the ALJ must obtain the opinion of a vocational expert instead of relying on the Guidelines.  *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).  However, the Guidelines still may be used where the nonexertional impairment does not "diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities."  *Id.*  In particular, when a claimant's subjective complaints are "explicitly discredited for legally sufficient reasons articulated by the ALJ," the Commissioner's burden at the fifth step may be met by use of the Guidelines.  *Id.* at 894-95.  An ALJ may discount a claimant's subjective allegations if they are inconsistent with the record as a whole.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. § 404.1529(c) (listing factors to consider);[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996) (considerations in assessing credibility of

---

[4]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

claimant's statements regarding symptoms).

In making his step-five determination, the ALJ stated, "If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile." (Tr. 16.)  He went on to find that Plaintiff was capable of performing the "full range" of sedentary work and, considering her age, education and work experience, a finding of "not disabled" was thus directed by Medical-Vocational Rule 201.19.  (Tr. 16.)

Plaintiff asserts that the ALJ should have called a vocational expert to testify, rather than relying on the Guidelines, because her occupational abilities were eroded due to nonexertional limitations, including: fatigue, dizziness and "numerous falls" due to fluctuations with her blood sugar (Tr. 32, 35-36); pain in her feet, legs, back and hips (Tr. 35-36); and tingling, numbness and sores on her feet (Tr. 232).

In his decision, the ALJ noted Plaintiff's testimony that: (1) her doctors were trying to get her sugar under control but it had not been under control for fifteen years; (2) she was always tired, falls a lot, and gets dizzy; (3) her diabetes has "caused ... damage" to her feet and stomach; (4) she has pain in her feet and legs and can hardly stand and walk; (5) her blood sugar fluctuates drastically; and (6) she has extreme fatigue "just about every day," lies down three times a day, and spends four to five

hours in bed during the day.  (Tr. 13-14, 32-37.)

The ALJ stated that he had considered Plaintiff's subjective allegations in light of "the entire case record," including the objective medical evidence, and in accordance with § 404.1529 and SSR 96-7p.  (Tr. 13.)  He expressly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible" to the extent they were inconsistent with his RFC assessment. (Tr. 14.)  However, by limiting her to sedentary work, the ALJ accounted for significant limitation due to any functional difficulties.

In support of his credibility determination, the ALJ pointed to the following evidence:

- Medical records showing that Plaintiff had received conservative treatment and medication for her diabetes from at least 2003, with diabetic checkups and lab work, through October 2009.  (Tr. 14-15, 163-69, 193-96, 205-18, 228-32, 352-54, 358-59, 363-65, 509-11.)

- Medical evidence that, despite self-reports that she was unable to control her diabetes, Plaintiff did not want to go to UAMS for treatment in November 2007.  (Tr. 14, 352.)

- Plaintiff's reports of hip and leg pain, but medical findings on November 6, 2007 of normal strength, no lumbar tenderness and no edema in extremities (Tr. 14, 243-44), and in November 2009 of ambulating without difficulty, steady gait, adequate joint function and no reports of falls within the last twelve months (Tr. 14, 539-40).

- X-rays on November 9, 2007, showing mild degenerative changes in the hips.  (Tr. 14, 350.)

- A March 1, 2007 report of a "benign" Holter monitor study showing normal sinus rhythm, occasional PACs and PVCs without sustained tachyarrhythmia, no AV block, no pauses, and no bradycardia. (Tr. 15, 176, 179-80.)

- Following a cardiac work-up, a March 5, 2007 report from Plaintiff's cardiologist that her EKG demonstrated normal sinus rhythm at a rate of 99 beats per minute, but some ECG abnormalities and non-specific ST-T wave abnormalities. (Tr. 15, 177, 181.)

- Plaintiff's decision at that time to "choose intervention with pharmacologic nature" rather than undergo electrophysiologic evaluation. (Tr. 15, 177.)

- April 2007 progress notes from her cardiologist that Plaintiff was tolerating her medication "quite well" and that much of her symptoms had abated, with no "extended" periods of SVT (supraventricular tachycardia). (Tr. 15, 170-72.)

- Plaintiff's April 2007 decision to continue with medication for her cardiac symptoms, rather than pursue ablation therapy. (Tr. 15, 171.)

- A normal transthoracic echocardiogram (ECG) in December 2009 at UAMS. (Tr. 15, 532-33.)

- Plaintiff's receiving "ongoing and continual" prescription medications indicating "conservative treatment." (Tr. 15, 490, 518)

- The state agency medical expert opinions that Plaintiff was capable of working at the medium exertional level. (Tr. 15, 375-86).

The ALJ's decision also noted Plaintiff had no problems with personal care except for getting help out of the bathtub. She reported she was able to prepare meals daily, do laundry (with help), shop in stores once a week, go to church on Sundays, and visit with her children and grandchildren daily. (Tr. 12, 14, 132-36.)

Based on the record before him, the ALJ properly discredited Plaintiff's subjective complaints and found that her symptoms did not diminish her ability to perform the full range of sedentary work. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). Because he expressly discredited her subjective allegations for legally sufficient reasons, use of the Guidelines was proper without calling for vocational expert testimony. *Id.*; *Baker*, 457 F.3d at 895; *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003).

### III. Conclusion

After a careful review of the entire record and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision. The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED THAT the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED THIS 13th DAY OF March, 2012.

_____
UNITED STATES MAGISTRATE JUDGE